FILED

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

2014 SEP 22 PM 1: 15

MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE, FLORIDA

ANTONIO L. BUCKMAN,

           Plaintiff,

v.                            Case No. 3:10-cv-1050-J-20JBT

L. SIMMONS, BRIAN STARLING,
J. BIRCHFIELD,

           Defendants.

## ORDER

### I. Status

Plaintiff Antonio L. Buckman, an inmate of the Florida penal system, initiated this action on November 15, 2010, by filing a pro se Civil Rights Complaint Form (Complaint) (Doc. 1) under 42 U.S.C. § 1983.[1] In the Complaint, Buckman names the following Defendants: Sergeant L. Simmons, Sergeant Brian Starling, and Officer J. Birchfield. Buckman claims the Defendants violated his Eighth Amendment right to be free from cruel and unusual punishment in

---

[1] The Court appointed counsel on May 24, 2013. See Order Appointing Counsel for Plaintiff (Doc. 58); Notices of Appearances (Docs. 59; 72).

that they were deliberately indifferent to his psychological and medical needs when they failed to respond to his threats of self-harm. Buckman asserts that, on August 28, 2010, he declared a psychological emergency; Simmons ignored Buckman's threats of self-harm and requests for help; and Buckman therefore cut himself and banged his head against the wall. Buckman states that Starling and Birchfield, on the next shift, were aware that Buckman was harming himself, but failed to assist; Starling punched Buckman several times and in the right eye twice; and Birchfield failed to intervene to stop the alleged assault. As relief, Buckman requests compensatory and punitive damages as well as declaratory relief.

Defendants filed an Answer (Doc. 34), and the Court set deadlines for discovery and the filing of dispositive motions. Order (Doc. 35). Defendants filed a Motion for Summary Judgment (Doc. 42) on June 20, 2012, and Plaintiff responded (Doc. 51). On February 27, 2013, the Court denied Defendants' summary judgment motion, stating "that there remain genuine issues of material fact with respect to Plaintiff's claims and that development of the record may be necessary . . . ." Order (Doc. 52). The Court encouraged the parties to discuss the possibility of settlement and directed them to inform the Court whether they could settle the matter privately among themselves. Id.

In light of the parties' unsuccessful attempts to privately settle the case at that time, the Court directed the parties to

contact the chambers of United States Magistrate Judge Joel B. Toomey and schedule a settlement conference. See Order (Doc. 56). Next, the Court scheduled a settlement conference (Doc. 57), and appointed counsel on May 24, 2013. See Order Appointing Counsel for Plaintiff (Doc. 58); Notices of Appearances (Docs. 59; 72). Magistrate Judge Toomey conducted a settlement conference on June 6, 2013,[2] at which a settlement was not reached, but an impasse was not declared. See Clerk's Minutes (Doc. 60). Since the Court had appointed counsel on May 24, 2013, just a few weeks before the settlement conference, the parties agreed that they needed additional time to discuss the possibility of settlement. Therefore, the Court granted the parties additional time to engage in settlement negotiations. See Order (Doc. 61), filed September

---

[2] In a filing submitted for the Court's consideration after the settlement conference, Defendants' counsel stated:

> At the settlement conference held on June 6, 2013, Plaintiff exposed his left arm to the Court and to the attorneys. A visual inspection of Plaintiff's left arm revealed approximately seven (7) welts or scars that were roughly the size of a normal band aid on his inner left forearm and his left bicep. The welts or scars were plainly visible for anyone to see, even from several yards away. Thereafter, the settlement negotiations concluded without reaching a settlement, but an impasse was not declared, and the parties agreed that they needed additional time to discuss the possibility of settlement. . . .

Defendants' Motion to Take Deposition of Inmate Plaintiff and Inmate Witness (Doc. 70), filed February 14, 2014, at 2.

26, 2013. The parties notified the Court that they were not able to reach an agreed-upon settlement. See Notices Regarding Settlement (Docs. 64; 65). Later, on November 15, 2013, the Court directed the parties to complete discovery by April 14, 2014, and file motions to dismiss or for summary judgment by May 14, 2014; the Court scheduled a final pretrial conference for October 1, 2014, and a jury trial for the trial term commencing Monday, November 3, 2014. See Case Management and Scheduling Order (Doc. 68).

Before the Court is Defendants' Motion for Summary Judgment as to Plaintiff's Claim for Damages (Motion; Doc. 77), filed May 14, 2014. With the benefit of counsel, Plaintiff responded. See Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment as to Plaintiff's Claim for Damages (Response; Doc. 79) with exhibits (P. Ex.).

## II. Plaintiff's Allegations

In his pro se verified Complaint,[3] Buckman alleges the following pertinent facts to support his Eighth Amendment use of force claim. As an inmate in the custody of the Florida Department of Corrections (FDOC), Buckman was housed at Florida State Prison

---

[3] See Stallworth v. Tyson, No. 13-11402, 2014 WL 4215438, at *2 (11th Cir. Aug. 27, 2014) (per curiam) (citations omitted) ("The factual assertions that [Plaintiff] made in his amended complaint should have been given the same weight as an affidavit, because [Plaintiff] verified his complaint with an unsworn written declaration, made under penalty of perjury, and his complaint meets Rule 56's requirements for affidavits and sworn declarations."); 28 U.S.C. § 1746; Fed. R. Civ. P. 56(c)(4).

(FSP) at the time of the incident. Complaint at 23.[4] On August 28, 2010, at approximately 6:30 a.m., while housed on maximum management status, Buckman experienced psychological distress and heard voices telling him to harm himself. Id. According to Buckman, he declared a psychological emergency, but Defendant Simmons ignored his request for help and closed the outer cell door to Buckman's cell, so he could not hear Buckman's pleas for assistance. Id. at 23-28. Ten minutes later, Buckman asked other inmates on the wing to call the officers for help, which they did, but the inmates' pleas were ignored. Id. at 28. Buckman then cut his left arm with a paperclip. Id.

Upon the officers' next wing check at 7:00 a.m., the other inmates advised Simmons that Buckman was cutting himself and needed help. Id. When Simmons opened Buckman's cell door and looked inside, Buckman told him that he had cut himself and needed help and would continue to cut himself, if Simmons did not help. Id. at 28-29. Simmons closed the cell door without providing any assistance. Id. at 28.

At approximately 7:30 a.m. during the next wing check, other inmates again advised Simmons that Buckman was cutting himself and needed psychological attention. Id. at 29. When Simmons opened Buckman's cell door, Buckman showed him cuts and told him he would

---

[4] The Court will cite to the electronic filing page numbers in the upper right-hand corner of the document.

continue to cut himself and would bang his head into the wall if he did not receive help. Id. Simmons again disregarded Buckman's pleas for help. Id. Simmons' shift ended at 7:55 a.m. Id. Buckman claims that, for approximately one hour and a half (from 6:30 a.m. until 7:55 a.m.), Simmons ignored his requests for psychological assistance and medical treatment, which resulted in Buckman's "self-inflicted 15 superficial laceration[s] to his left arm that could have been prevented . . . ." Id.

At approximately 8:00 a.m., Defendants Starling and Birchfield made the first wing check of the 8:00 a.m. until 4:00 p.m. shift. Id. at 30. Starling opened Buckman's cell door, inquired as to Buckman's status, and advised that he would call someone. Id. At the next wing check at 8:30 a.m., Starling (with Birchfield present) opened Buckman's cell door, asked about Buckman's status, and closed the cell door. Id. Buckman claims that he informed Starling both times that he needed help. Id.

At 9:00 a.m., Buckman told Starling and Birchfield that he "was cutting again," but they disregarded his pleas for help. Id. at 30-31. Between 9:05 a.m. and 9:20 a.m., other inmates informed the officers that Buckman needed help, but the officers still ignored the pleas. Id. at 31. At 9:30 a.m., when Buckman showed Starling (in the presence of Birchfield) the cuts, Starling told Buckman that he did not see any blood. Id. At 10:00 a.m., Buckman and other inmates again advised that Buckman needed help. Id. at

6

32. According to Buckman, Captain Bonsall arranged for Buckman to receive psychological assistance at approximately 10:25 a.m. Id. During Buckman's removal from his cell, Starling punched Buckman several times and twice in the right eye. Id. at 33.

### III. Summary Judgment Standard

The Eleventh Circuit recently set forth the summary judgment standard.

> Summary judgment is proper when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The substantive law controls which facts are material and which are irrelevant. Raney v. Vinson Guard Service, Inc., 120 F.3d 1192, 1196 (11th Cir. 1997). Typically, the nonmoving party may not rest upon only the allegations of his pleadings, but must set forth specific facts showing there is a genuine issue for trial. Eberhardt v. Waters, 901 F.2d 1578, 1580 (11th Cir. 1990). A pro se plaintiff's complaint, however, if verified under 28 U.S.C. § 1746, is equivalent to an affidavit, and thus may be viewed as evidence. See Murrell v. Bennett, 615 F.2d 306, 310 n.5 (5th Cir. 1980). Nevertheless, "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge." Fed.R.Civ.P. 56(c)(4). "[A]ffidavits based, in part, upon information and belief, rather than personal knowledge, are insufficient to withstand a motion for summary judgment." Ellis v. England, 432 F.3d 1321, 1327 (11th Cir. 2005).
>
> As we've emphasized, "[w]hen the moving party has carried its burden under Rule 56[], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts ... Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita

> Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Unsupported, conclusory allegations that a plaintiff suffered a constitutionally cognizant injury are insufficient to withstand a motion for summary judgment. See Bennett v. Parker, 898 F.2d 1530, 1532-34 (11th Cir. 1990) (discounting inmate's claim as a conclusory allegation of serious injury that was unsupported by any physical evidence, medical records, or the corroborating testimony of witnesses). Moreover, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380, 127 S.Ct. 1769, 167 L.Ed.2d 686 (2007).

Howard v. Memnon, Case No. 13-12049, 2014 WL 3411093, at *1-2 (11th Cir. July 15, 2014) (per curiam) (footnote omitted). In an action involving the alleged violation of plaintiff's federal constitutional rights under 42 U.S.C. § 1983, "assuming all facts in the light most favorable to [plaintiff, as the non-moving party]," summary judgment is properly entered in favor of the defendant where "no genuine issue of material fact exist[s] as to whether [plaintiff]'s constitutional rights were violated." McKinney v. Sheriff, 520 F. App'x 903, 905 (11th Cir. 2013) (per curiam).

## IV. Law and Conclusions

In their Motion, Defendants Simmons, Starling and Birchfield argue that the Court should dismiss Buckman's claims for compensatory and punitive damages and limit his requests to nominal damages since he has no more than a *de minimis* injury. See Motion at 5-9. In support of their Motion, Defendants rely upon exhibits submitted with their previous summary judgment motion. See Motion for Summary Judgment (Doc. 42) with exhibits (Def. Ex.). With the benefit of counsel, Plaintiff responded, stating that the Defendants, for the second time, have moved for summary judgment on "this exact basis - having previously been denied" yet they offer no new evidence to demonstrate "the disappearance of what this Court previously found to be a genuine issue of material fact." Response at 2. Additionally, Plaintiff asserts that Buckman "has the scars to prove his injuries were serious" and that Defendants fail to demonstrate that the injuries they caused Buckman were so insignificant that Buckman should be precluded from recovering compensatory and punitive damages. *Id.* at 2, 15. Plaintiff submitted the following exhibits: P. Exs. 1, Deposition of Antonio L. Buckman (Buckman's 2011 Deposition), dated September 22, 2011; 2, Deposition of Brian Starling, dated April 8, 2014; 3, Deposition of Antonio L. Buckman (Buckman's 2014 Deposition), dated March 18, 2014. Plaintiff requests that the Court deny Defendants' Motion and allow the jury to determine the extent of Buckman's damages.

The Eleventh Circuit has set forth the standard in an excessive use of force case.

> [O]ur core inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." Hudson v. McMillian, 503 U.S. 1, 112 S.Ct. 995, 999, 117 L.Ed.2d 156 (1992). In determining whether force was applied maliciously and sadistically, we look to five factors: "(1) the extent of injury; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) any efforts made to temper the severity of a forceful response; and (5) the extent of the threat to the safety of staff and inmates[, as reasonably perceived by the responsible officials on the basis of facts known to them]..." Campbell v. Sikes, 169 F.3d 1353, 1375 (11th Cir. 1999) (quotations omitted).[5] However, "[t]he Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." Hudson, 112 S.Ct. at 1000 (quotations omitted).

McKinney, 520 F. App'x at 905; Howard, 2014 WL 3411093, at *2 ("Courts examine the facts as reasonably perceived by the defendants on the basis of the facts known to them at the time.") (citation omitted).

While the United States Supreme Court has held that the extent of the injury is a factor that may provide some evidence of the amount of force applied and whether the use of force was necessary

---

[5] See Whitley v. Albers, 475 U.S. 312, 321 (1986).

10

under the specified circumstances, see <u>Wilkins v. Gaddy</u>, 559 U.S. 34, 37-38 (2010) (per curiam), that does not mean that absent injury or significant injury a claim must fail. Indeed, the Court has unequivocally stated "the use of excessive physical force against a prisoner may constitute cruel and unusual punishment [even] when the inmate does not suffer serious injury." <u>Id</u>. at 34 (quoting <u>Hudson v. McMillian</u>, 503 U.S. 1, 4 (1992)). Nevertheless, the Court explained:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. <u>Id</u>. at 7, 112 S.Ct. 995.[6] "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought necessary' in a particular situation." <u>Ibid</u>.(quoting <u>Whitley</u>, 475 U.S. at 321, 106 S.Ct. 1078).[7] The extent of injury may also provide some indication of the amount of force applied. . . .
>
> Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. . . .

<u>Wilkins</u>, 559 U.S. at 37-38. A court ultimately should decide an excessive force claim based on the nature of the force rather than the extent of the injury. <u>Id</u>. at 38.

Here, according to Buckman's assertions in his verified Complaint and sworn statements at depositions, Defendant Starling's use of force was unjustified and excessive, and Defendants'

---

[6] <u>Hudson v. McMillian</u>, 503 U.S. 1 (1992).

[7] <u>Whitley v. Albers</u>, 475 U.S. 312 (1986).

deliberate indifference to his psychological and medical needs violated his Eighth Amendment rights to be free from cruel and unusual punishment. Buckman asserts that he suffered superficial lacerations to his left arm and abrasions on the forehead as a result of Defendants' ignoring his pleas for psychological assistance and an edema to the right cheekbone as a result of Starling's use of force. Complaint at 29, 32, 33. Confirming that Buckman was injured, the medical records show that he suffered thirty superficial minor lacerations on his left arm; an edema to the center of his forehead with several minor abrasions; and an edema to his right cheekbone. Def. Exs. F; I; I9. Additionally, at depositions, Buckman confirmed that the thirty lacerations on the day of the incident produced blood, see Buckman's 2011 Deposition at 34, and have become as many as sixteen scars on his left arm, some being more noticeable than others, see Buckman's 2014 Deposition at 25-27. Upon review of the parties' submissions, the Court concludes that there remain genuine issues of material fact with respect to Plaintiff's Eighth Amendment claims and as to the nature and extent of his injuries. As such, Defendants' Motion for Summary Judgment as to Plaintiff's Claims for Damages (Doc. 77) is due to be denied.

Therefore, it is now

**ORDERED:**

1. Defendants Simmons, Starling and Birchfield's Motion for Summary Judgment as to Plaintiff's Claim for Damages (Doc. 77), filed May 14, 2014, is **DENIED**.

2. The parties are encouraged to continue to discuss the possibility of settlement. They shall notify the Court immediately if their efforts to settle the matter privately among themselves are successful <u>or</u> if they determine that a settlement conference before a Magistrate Judge would be beneficial.

**DONE AND ORDERED** at Jacksonville, Florida this 22nd day of September, 2014.

_____
UNITED STATES DISTRICT JUDGE

sc 9/18
c:
Counsel of Record